IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| JANET ELIZABETH MOORE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-6030-CV-SJ-HFS |
| | ) | |
| WAL-MART STORES EAST, LP | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Before the court is defendant's motion for summary judgment (doc. 35). Also, before the court are pro se plaintiff's motions to appoint counsel (doc. 42), and for protective order (doc. 43). For the reasons indicated below, summary judgment will be granted.

Factual Background[1]

Plaintiff was hired on March 30, 2007, as a Meat/Deli Stocker at Wal-Mart Store Number 560 located in St. Joseph, Missouri. (SUMF: ¶ 1). On May 20, 2008, plaintiff filed a written statement stating that she was attracted to a co-worker named Robin Knapp and that they had engaged in consensual touching consisting of hugs and cuddling which took place in the workplace cooler or freezer. (Id: ¶ 11). A "lover's spat" occurred once plaintiff learned of Mr. Knapp's prior romantic relationships with other women. (Id). Plaintiff also admitted that she was attracted to another co-worker, Nicholas Metcalf, and engaged in consensual touching with him in the cooler. (Id: ¶ 12). She subsequently became upset with Mr. Metcalf when she learned he had a girlfriend.

---

[1]Many of the facts are taken from defendant's statement of uncontroverted material facts "SUMF." Plaintiff did not provide a concise listing of material facts tending to show the existence of a genuine issue, however, where contested by plaintiff, it will be duly noted.

(Id). Plaintiff alleged that Mr. Metcalf was trying to control her because he knew she was attracted to him; she also requested that Mr. Metcalf be transferred into her department to prevent him from speaking with his girlfriend during breaks. (Id: ¶ 13). Plaintiff also stated that in the future she would refrain from romantic endeavors with Mr. Knapp and Mr. Metcalf, and see a doctor to get her personal problems under control. (Id: ¶ 14).

Defendant commenced an investigation of the sexual harassment claim raised by plaintiff, and although it could not substantiate plaintiff's claim, it issued warnings to plaintiff, Mr. Knapp, and Mr. Metcalf against engaging in any further inappropriate conduct at the workplace. (Id: ¶ 15). Plaintiff was issued a written Coaching for participating in inappropriate sexual conversations, touching Mr. Metcalf in an unwelcome manner and engaging in flirtatious behavior. (Id). Plaintiff was also directed to stay away from the Dairy Department where Mr. Metcalf worked. (Id).

Approximately one month later, on June 18, 2008, employee Scott Salinger reported that plaintiff was repeatedly pressing her body against his and told him uninvited stories of her past sexual exploits and current sexual frustrations. (Id: ¶ 16). Defendant conducted another investigation, and during this investigation, Mr. Salinger stated that plaintiff's conduct was unwelcome, made him uncomfortable, and interfered with his work productivity; plaintiff was suspended. (Id: ¶¶ 17-18). Mr. Metcalf reported that despite prior warnings, plaintiff visited his section regularly and urged him to obtain permission for her to visit his department. (Id: ¶ 19). Mr. Metcalf also stated that plaintiff threatened to tell management about his interactions with his girlfriend. (Id). Defendant states that another male employee complained about comments made by plaintiff in front of him regarding her sex life; while another male employee stated that plaintiff called Mr. Metcalf's girlfriend a "bar slut." (Id: 20).

On June 19, 2008, plaintiff submitted a written statement admitting that despite prior

warnings she continued to visit Mr. Metcalf in the Dairy Department in an attempt to become his friend; plaintiff also admitted that she disliked Mr. Metcalf's girlfriend, and opined that Mr. Metcalf complained about her behavior because he was upset with her regarding her prior relationship with Mr. Knapp. (Id: ¶ 21). At the close of the investigation, defendant concluded that plaintiff violated its policies forbidding sexual harassment and inappropriate conduct, and on June 25, 2008, terminated her employment. (Id: ¶ 22).

On June 27, 2008, plaintiff filed a charge of discrimination with the Missouri Commission of Human Rights "MCHR" alleging sexual harassment and retaliation; on July 17, 2008, the charge of discrimination was sent to the Equal Employment Opportunity Commission "EEOC" for dual filing purposes. (Complaint: Attachment). On September 30, 2008, plaintiff was issued a notification of Restriction from Property in which plaintiff was restricted entrance to any of defendant's properties. (SUMF: ¶ 23). Plaintiff wrote a letter apologizing to Mr. Metcalf "for what I've put him through ...," and promised to stay away from him and to keep any potential future attractions to male employees under control. (Id: ¶ 24). On December 29, 2008, the MCHR closed the case and issued plaintiff a Notice of Right to Sue; and on March 12, 2009, the EEOC closed the file stating that it was unable to conclude violations of Title VII occurred. (Complaint: Attachment). On March 18, 2009, plaintiff commenced this action alleging wrongful termination based on sex discrimination.

Discussion

A.    <u>Standard of Review</u>

In the context of a summary judgment motion, the court's function is to consider the evidence
and determine whether the moving party is entitled to judgment as a matter of law. <u>Jordan v.</u>

Douglas County School Dist. No. 1, 2008 WL 5244310 * 3 (D.Neb). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. Id, (citation omitted). In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.' " Id. A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." Id. In considering a motion for summary judgment, a court views the facts in the light most favorable to the nonmoving party, and gives that party the benefit of all reasonable inferences. Id.

B.  Sex Discrimination

Plaintiff claims that she was discriminated due to her gender because while she was disciplined for sexually harassing male co-workers, male employees allegedly guilty of similar offenses were not disciplined. Additionally, plaintiff complains that female co-worker, Kelly, also was not disciplined for acting like a "bar slut" at work.[2] In support of her argument plaintiff states that when she reported Mr. Knapp sneaking up behind her in the freezer while touching her breasts and fantasizing about rape, defendant took no adverse action against Mr. Knapp. Plaintiff also complains that although Mr. Metcalf interacted inappropriately with his girlfriend, Kelly, at work no adverse action was taken.

---

[2]As a female co-worker, Kelly is also a member of the protected group, and, therefore, cannot be the basis of plaintiff's Title VII claims of sex discrimination.

In sex discrimination cases, a plaintiff may survive a defendant's motion for summary judgment in one of two ways. McGinnis v. Union Pacific R.R., 496 F.3d 868, 873 (8th Cir. 2007). The plaintiff may present "direct evidence of discrimination, that is, evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." McGinnis, at 873; quoting, Russell v. City of Kan. City, Mo., 414 F.3d 863, 866 (8th Cir. 2005) (internal quotation marks omitted). Alternatively, if the plaintiff lacks direct evidence of discrimination, the plaintiff may survive the defendant's motion for summary judgment by creating an inference of unlawful discrimination under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff bears the burden of establishing a prima facie case of discrimination which creates a presumption of unlawful discrimination. Bankston v. Chertoff, 460 F.Supp.2d 1074, 1086 (D.N.D. 2006). In order to establish a prima facie case of sex discrimination, plaintiff must show that she is a member of a protected class, was qualified to perform her job, suffered an adverse employment action, and others similarly situated, but not members of the protected group, were treated differently. Bankston, at 1086. If plaintiff successfully establishes a prima facie case, defendant is then required to come forward with evidence of a legitimate, nondiscriminatory reason for the defendant's actions. Id. If the defendant articulates such a reason, the burden returns to the plaintiff to show that the defendant's proffered reason is pretextual. Id. [A plaintiff] "must show 'both that the reason was false, and that discrimination was the real reason.' " Id; quoting, Stuart v. General Motors Corp., 217 F.3d 621, 634 (8th Cir. 2000). "An employee's attempt to prove pretext or actual discrimination requires more substantial evidence than it takes to make a prima facie case, however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light

of the employer's justification." Id (internal citation omitted). To overcome the proffered reasons and avoid summary judgment, a plaintiff must present evidence that (1) creates a question of material fact as to whether the defendant's proffered reasons are pretextual, and (2) creates a reasonable inference that gender was a determinative factor in the adverse employment decision. Id.

Because plaintiff has not presented direct evidence that she was disciplined and ultimately terminated based on her gender, the McDonnell Douglas burden-shifting analysis will be used. There is no dispute that plaintiff is a member of a protected class, possessed the requisite skills to perform her duties, and suffered an adverse employment action. Plaintiff's claim of sex discrimination hinges on whether she was treated differently than similarly situated persons of the opposite sex. Bankston, at 1087.

Defendant states and plaintiff does not dispute, that an investigation immediately ensued based upon her written report dated May 14, 2008, that Mr. Knapp grabbed her in the freezer. However, in a written statement also dated May, 14, 2008, plaintiff admitted that she was attracted to Mr. Knapp when the touching first began, and that she only found it offensive after she learned of his prior romantic relationships with other women. This is essentially corroborated by plaintiff in her deposition in which she states that she engaged in consensual hugging, cuddling, and kissing with Mr. Knapp in either the freezer or cooler at work for a period of six months. (Defense Exhibit 4; pg. 29). Defendant contends that while plaintiff, Mr. Knapp, and Mr. Metcalf were all issued warnings at the conclusion of the investigation in May of 2008, plaintiff alone continued the prohibited inappropriate conduct leading to a suspension and dismissal. In written statements, attached to her complaint, plaintiff states that at the age of 47 she initially had an affair[3] outside

---

[3] At the time, plaintiff was married and residing with her husband, but claimed the two of them led separate lives. (Statement dated July 24, 2008, pg. 12). Plaintiff stated that she has been unhappily married for twenty years, but remained with her husband for financial reasons.

work with co-worker, Jim. (Statement dated July 24, 2008, pg. 4). Shortly thereafter, she became attracted to Mr. Metcalf. (Id). Although plaintiff worked in the meat department, she arranged to work in the dairy department where Mr. Metcalf was assigned and initiated touching him while they worked in the cooler; Mr. Metcalf reciprocated. (Id, pgs. 4-5). Plaintiff states that she became frustrated with the consensual touching arrangement at work, and desired to meet with Mr. Metcalf outside of work. (Id, pg. 5). When plaintiff learned that Mr. Metcalf had a girlfriend, she then told him that Mr. Knapp groped her in the freezer. (Id). Plaintiff admits that she reported Mr. Metcalf for sexual harassment when she became angry with him for having a girlfriend. (Id, pg. 6; see also, August 18, 2008 MCHR Interview). Plaintiff also admits that she followed Mr. Metcalf at work attempting to convince him to break up with his girlfriend and meet her after work to have sex. (Id). Defendant commenced an investigation regarding plaintiff's charges of sexual harassment against Mr. Knapp and Mr. Metcalf; during the investigation, plaintiff became attracted to another co-worker, Scot, and met him after work on a deserted road to have sexual intercourse with him in his car. (Id, pgs. 6-9). Defendant concluded that plaintiff aggressively sought romantic relationships with several male co-workers, and when she was rebuffed and advised that harassment charges might be filed against with management, plaintiff preemptively raised claims of sexual harassment to deflect attention from her inappropriate behavior.[4] (Complaint Attachment: August 4, 2008, Letter to MCHR). Nevertheless, at the conclusion of the investigation, Mr. Knapp was given a verbal coaching for saying negative remarks about and to plaintiff; Mr. Metcalf received a verbal coaching

---

(Defense Exh. 4: Plaintiff's Depo., pgs. 23-24). Plaintiff admitted that during the marriage she went out "bar-hopping" one night and met a man; she later gave birth to twin daughters. (Id; pg. 24).

[4]This is reflected by defendant in a Statement of Position to the MCHR dated August 4, 2008, and attached to plaintiff's complaint as an exhibit.

for failing to report inappropriate touching by plaintiff; and plaintiff received a written coaching for participating in inappropriate sexual conversations and was directed to refrain from entering the dairy department. (SUMF: ¶ 15).

Approximately one month after the conclusion of the initial investigation, male employees complained to management regarding plaintiff's continued inappropriate conduct. (Id:¶¶ 16-20). These complaints consisted of plaintiff rubbing and brushing parts of body against co-worker Scott Salinger which made him feel uncomfortable. (Id: ¶¶ 16-17; see also, Complaint Attachment, Scott Salinger, Workplace Incident Report). A second investigation ensued, and another male co-worker, Cody Shelton, stated that he witnessed plaintiff touching Mr. Salinger and telling him about her sex life, and that Mr. Salinger later told him it made him uncomfortable. (Id: ¶ 20; see also, Complaint Attachment, Cody Shelton, Workplace Incident Report). Mr. Metcalf also reported that plaintiff continued to come to his workplace even though previously warned and requested that he ask management to permit her to work in his area; when he refused, plaintiff threatened to report that he was acting inappropriately with his girlfriend, Kelly. (Complaint Attachment; Nic Metcalf, Workplace Incident Report). In a statement dated June 19, 2008, plaintiff acknowledged that in direct contravention of the prior warning issued at the conclusion of the first investigation she approached Mr. Metcalf on June 18th to tell him that she missed visiting his department; she also sought his forgiveness and requested that she be given another chance. (Complaint Attachment: Exh. N, Statement June 19, 2008). All in all, there appears to be a significant number of instances of inappropriate work-related conduct, but the fact remains that plaintiff continued to seek out her male counterparts after warned to refrain such conduct. This differentiates her from those she accuses of similarly inappropriate behavior. Consequently, plaintiff fails to show that she and these co-workers were similarly situated in all relevant respects. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 692 (8th

Cir. 2002) (a differing disciplinary history precludes a conclusion that the plaintiff and his comparator are similarly situated); see also, Roberts v. Cardinal Health, 2006 WL 744270 * 8 (W.D.Mo.) (Plaintiff failed to show that her co-worker had a similar history of violating the defendant's policy prohibiting harassment and intimidation).[5]

Assuming, however, for argument's sake that plaintiff successfully established a prima facie case of sex discrimination, defendant has come forward with evidence of a legitimate, nondiscriminatory reason for its actions. Plaintiff admits that she was aware of defendant's workplace policies, and that she passed all relevant computer courses on corporate ethics, inappropriate behavior, and sexual harassment. (Defense Exh. 4, Plaintiff's Depo. Pg. 77). In various written statements plaintiff admits that she flirts and signals her interest in men, and in particular, various male co-workers.[6]

Defendant noted that it could not corroborate plaintiff's complaint about Mr. Knapp touching her in the freezer because there were no cameras in that area, but defendant advised plaintiff to curtail her flirtatious behavior. While this response may be questionable, it does not support plaintiff's contention that plaintiff was singled out for discrimination due to her gender. Parks v. Missouri Dept. of Social Services, 2006 WL 3331310 *3 (W.D.Mo.) (There is a recognition that, with regard to the determinations made by the department as to how to discipline its employees, the

---

[5]See also, Gilmore v. AT & T, 319 F.3d 1042, 1046 (8th Cir. 2003) (other individuals are not similarly situated because the plaintiff did not establish that the circumstances of their misconduct was comparable in severity or frequency to her infractions).

[6]In a letter dated February 9, 2009, plaintiff recalls acting too friendly with a male stranger at her home while he inquired about the sale of her car. (Complaint Attachment). Plaintiff states that this encounter made her realize that she needed to change her behavior in order to work in customer service. (Id). In the same letter, plaintiff apologized to the store managers and Mr. Metcalf for her behavior. (Id). Plaintiff also recognized that she brought many of her personal problems to work. (Defense Exh. 4: Plaintiff's Depo. Pg.15).

law is clear that "employers have wide latitude to make business decisions."); see also, Dorsey v. Pinnacle Automat. Co., 278 F.3d 830, 837 (8th Cir. 2002) (federal courts "do not sit as super-personnel departments to second-guess the business decisions of employers [rather] the threshold question is ... whether [the employer's] reasons for its employment actions are true, not if they are wise, fair, or correct"). Throughout her pleadings, plaintiff complains that Mr. Knapp was not fired for allegedly assaulting her in the freezer, and therefore, was treated preferentially. It is noteworthy, however, that in opposition to the motion to dismiss, plaintiff acknowledges that the incident constituted "a lovers spat between me & Robin." (Doc. 37), and further, that once warned, Mr. Knapp did not bother her again. (Complaint Attachment: Statement dated July 24, 2008, pg. 10).

In sum, and after viewing the evidence in a light favorable to plaintiff, her conclusory allegations of discrimination are insufficient to show that defendant's legitimate, non-discriminatory reasons for terminating her employment were pretext for sex discrimination.

C.  Retaliation

Although not expressly stated in the complaint, in the MCHR filing, plaintiff alleges harassment in retaliation for reporting sexual harassment. The McDonnell Douglas framework governs the order and allocation of proof for retaliation claims. Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1048 (8th Cir. 2005). To establish a prima facie case of retaliation, a plaintiff must show: (1) a statutorily protected activity; (2) an adverse employment action; and (3) a causal connection between the two. Id. Once the prima facie case is made, the defendant must articulate a legitimate, nondiscriminatory reason for its actions. Id. The defendant need not prove the absence of retaliatory motive, only enough to dispel the inference of retaliation. Id. The burden then shifts

to the plaintiff to establish that the alleged legitimate, nondiscriminatory reason for dismissal was a pretext. Id.

Here, the record does not raise a reasonable inference of retaliation for engaging in protected activity. One might argue that plaintiff's complaint to management regarding sexual harassment constituted engagement in a protected activity. However, plaintiff fails to set forth evidence that the adverse employment action taken was causally connected to the engagement of that protected activity. In fact, the evidence submitted by defendant through affidavits, and plaintiff's deposition reveal that plaintiff was terminated because of her continued inappropriate and unprofessional conduct.

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment (ECF doc. 35) is GRANTED. The clerk of the court is directed to issue judgment in favor of defendant. It is further

ORDERED that plaintiff's motions for appointment of counsel (ECF doc. 42) and for protective order (ECF doc. 43) are DENIED as moot.

It is further

ORDERED that the clerk of the court mail a copy of this order by regular mail, and certified mail, return receipt to plaintiff at:

1304 Northwood Drive, Apt. 2

St. Joseph, Mo. 64505

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

July  20 , 2010

Kansas City, Missouri